# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>**101 41ST ST NE LLC**<br>**2100 15TH ST SE LLC**<br>**3205 D ST SE LLC,**<br><br>        **Debtor.** | Case No. 24-00135-ELG<br>Case No. 24-00136-ELG<br>Case No. 24-00137-ELG<br><br>**Chapter 11**<br><br>**(NOT JOINTLY ADMINISTERED)** |

## MOTION TO RECONSIDER THE ORDER APPROVING EMPLOYMENT OF MCNAMEE HOSEA, P.A. AS COUNSEL FOR THE DEBTORS

Gerard R. Vetter, the Acting United States Trustee for Region 4 (the "U.S. Trustee"), by and through his undersigned counsel, and pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable herein pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), files this Motion to Reconsider the Order Approving Employment of McNamee Hosea, P.A. as Counsel for the Debtors (the "Order") entered in each of the above-referenced cases. Justin Fasano, Esq. and McNamee Hosea, P.A. (the "Firm") should be disqualified from serving as counsel to the above-captioned Debtors as they are not disinterested as required by the Bankruptcy Code in light of certain additional disclosures made in connection with the cases since the entry of the Order. In support of this Motion, the U.S. Trustee states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(1). Venue is proper in this district under 28 U.S.C. § 1408.

1

2. Pursuant to 11 U.S.C. § 307, the U.S. Trustee for Region 4, which includes the District of Columbia, under 28 U.S.C. § 581(a)(7), has standing to appear and be heard on any issue in a case or proceeding under the Bankruptcy Code.

3. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is statutorily obligated to monitor the administration of cases commenced under the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Specifically, he is charged with a number of supervisory responsibilities in reorganization bankruptcy cases under chapter 11 of the Bankruptcy Code, including monitoring applications filed under section 327 of title 11. 28 U.S.C. § 586(a)(3)(I).

## FACTUAL BACKGROUND

4. The above-captioned cases were each commenced by the filing of voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on April 24, 2024.

5. On May 1, 2024, the Firm filed its Application for Authority to Employ McNamee Hose[a] P.A. as Counsel for Debtors and Debtors in Possession (the "Application").

6. In support of the Application, Mr. Fasano made the following representations in his Verified Statement:

> 3. Neither I, nor any member or associate of McNamee Hosea, insofar as I have been able to ascertain, represents any other interest adverse to the Debtors or to the Debtors' estates, and McNamee Hoses is a disinterested person.
>
> 4. To the best of [my] knowledge, information and belief, McNamee Hosea has no other connection with any of the Debtors' creditors, or any other party-in-interest, their respective attorneys and accountants, the

United States Trustee, or any person employed in the office of the United States Trustee.

7. On May 16, 2024, the Court entered its Order without objection.

8. On May 20, 2024, the Debtors each filed their Statement of Financial Affairs (the "SOFA") and Schedules.

9. The SOFA for 101 41st ST NE, LLC (the "41st St. Debtor") lists the following 90-day transfers:

| Transferee | Date | Amount of Transfer |
| --- | --- | --- |
| Corvest | 2/5/2024 | $10,300 |
| 945 Longfellow St Nw LLC | 2/9/2024 | $9,100 |
| CBRE | 3/13/2024 | $19,000 |
| Fred Gamarra | 3/15/2024 | $9,000 |
| Calvin Massey | 3/15/2024 | $10,000 |
| Masterpiece Management | 4/10/2024 | $27,000 |
| Masterpiece Management | 4/12/2024 | $21,000 |
| Masterpiece Management | 4/15/2024 | $30,000 |
| Masterpiece Management | 4/15/2024 | $14,600 |
| Masterpiece Management | 4/15/2024 | $12,500 |
| 700-704 51st ST NE DE LLC | 4/19/2024 | $15,000 |
| 2501 Naylor Rd SE LLC | 4/22/2024 | $160,944.68 |

10. The SOFA for 2100 15th St SE, LLC lists the following 90-day transfers:

| Transferee | Date | Amount of Transfer |
| --- | --- | --- |
| TD Bank, N.A. | 2/2/2024 | $15,000 |
| Masterpiece Management | 3/6/2024 | $14,500 |
| 101 41st St NE LLC | 4/9/2023 | $11,000 |

11. The Debtor's representative and owner, Jesper Sixtus Nylen ("Nylen"), testified at the 341 meetings of the above-captioned Debtors that he was the 100% owner of the Debtors.

12. The 2021 and 2022 Federal Tax Returns of the 41st St. Debtor provided to the U.S. Trustee listed "Ali Razjooyan Real Estat" as a 1% owner of the Debtor and Jesper Nylen as the 99% owner.

13. The tax documents for 2022 provided in connection with the 15th St. case show "Ali Razjooyan Real Estat" as the "Shareholder/Partner name".

14. The D Street Debtor did not provide any tax documents to the U.S. Trustee in connection with its case, save for an extension to file its 2023 federal return.

15. US Realty, LLC ("US Realty") is listed on the Schedule F of each of the three Debtors.

16. US Realty is listed on the Schedule G of 2100 15th ST SE LLC and 3205 D ST SE LLC.

17. Mr. Nylen testified that he reviewed and signed the Statements and Schedules before they were filed and that the information contained in the Statements and Schedules is true and correct.

18. On May 23, 2024, the U.S. Trustee held and concluded the 341 Meeting of Creditors.

19. At the 341 Meeting of Creditors, undersigned counsel asked Mr. Nylen about the 90-day transfers listed on the Debtor, 101 41st St. NE, LLC's (the 41st ST. Debtor") SOFA.

20. Mr. Nylen testified that money was borrowed from 945 Longfellow St NW LLC ("945 Longfellow") in the amount of $9,100 and then shortly thereafter paid back.

21. Mr. Nylen testified that he did not have an interest in that entity, and when asked who the owner of 945 Longfellow was, Mr. Nylen hesitated and asked Mr. Fasano for direction.

22. Mr. Fasano responded "Do you know the answer, Jesper? If you don't know then you don't know. I mean there are a bunch of related entities, I am not sure who the owner of that entity is."

23. Mr. Nylen then indicated that he did know who the owner was and Mr. Fasano

instructed him to go ahead and answer.

24. Mr. Nylen answer that Ali Razjooyan was the owner of 945 Longfellow.

25. When asked about Masterpiece Management, Mr. Nylen testified that those amounts paid to it were the return of funds loaned to the 41st St. Debtor and that Masterpiece Management was a related entity to 945 Longfellow.

26. When asked about the $160,944.68 paid to 2501 Naylor Rd. SE LLC, Mr. Nylen testified that those amounts were paid on account of a loan that 2501 Naylor Rd SE LLC previously made to the 41st St. Debtor and that it was an entity owned by Mr. Razjooyan.

27. Genova Holding Co. LLC, another entity controlled by Mr. Razjooyan, also loaned money to the 41st St Debtor and was repaid during the 90days prior to the bankruptcy filing; however, the SOFA has not yet been amended to reflect the payment.

28. Mr. Nylen testified that the loans made by Mr. Razjooyan's entities were used for "liquidity."

29. When asked what he meant by that, Mr. Nylen testified that the loans were made by the Razjooyan entities in the beginning of April 2024 so that the 41st St. Debtor's bank account appeared to show liquidity for purposes of obtaining a refinance and the "loans" were then repaid shortly thereafter.

30. Mr. Nylen further testified that he had a third party, US Realty, that was helping him put together the paperwork for the sale.

31. Mr. Nylen testified that he did not know whether Mr. Razjooyan had anything to do with US Realty.

32. On June 4, 2024, this Honorable Court held a hearing in the cases of 1416 Eastern Ave. NE LLC ("1416 Eastern Ave") (Case Number 24-00180) and 945 Longfellow St. NW, LLC

("945 Longfellow") (Case Number 24-00181) on certain emergency motions to sell real property.

33. At the June 4th hearing, there was extensive testimony by Mr. Razjooyan, including the following testimony regarding his involvement in US Realty:

> Q. What is US Realty?
> A. US Realty is a management company.
> Q. Um-hum. It's your management company, right?
> A. Yes.
> Q. Okay. You own it?
> A. I don't own it, no.
> Q. Sorry. What was that?
> A. I -- I do not own it. I manage it.

34. Mr. Razjooyan also testified that Mr. Fasano represented him in connection with the Guatemala/Rivera Matters.[1]

35. Mr. Razjooyan testified that he made referrals to Mr. Nylen regarding potential purchasers for his properties, including Richard Ballas, whose entity, District Housing, LLC was the contract purchaser for the sale of the 41st St. Debtor and the 15th St. Debtor's properties.

36. Following a lunch break at the June 4th hearing, and prior to what all defending parties believed would be closing argument on the Sale Motions, proposed counsel for 945 Longfellow and 1416 Eastern Ave withdrew the Sale Motions on the record. No reasoning for the abrupt withdrawal of the Sale Motions was given.

37. Mr. Fasano, who was also present at the hearings, made an appearance on the record in relation to the Debtors' cases and withdrew the sale motions for the 15th St. Debtor and the 41st

---

[1] The U.S. Trustee refers to the following cases collectively herein as the "Guatemala/Rivera Matters": (1) 4001 First St. SE, LLC, Case Number 24-00138; (2) 4257-61 6th St. SE, LLC, Case Number 24-00139; (3) 5012 Bass Place SE, LLC, Case Number 24-00140; (4) 4641 Hillside Rd. SE, LLC, Case Number 24-00141; (5) 4318 Halley Terrace SE, LLC, Case Number 24-00142; and (6) 2812 Pomeroy Rd. SE, LLC, Case Number 24-00143.

St Debtor that were pending and were set to be heard the following day, June 5, 2024. No reasoning was given or has since been given as to why the 41st St. Debtor and 15th St. Debtor withdrew those motions.

38. On June 5, 2024, at the request of the U.S. Trustee, Mr. Fasano filed a Supplemental Verified Statement, which provides as follows:

> b. **SUPPLEMENTAL STATEMENT**: After the previous verified statement was filed, I learned that certain money had been placed into the accounts of 101 41st and 2100 15th (but not 3205 D) by entities controlled or owned by Ali (Sam) Razjooyan and then taken out of those accounts before the filing of these cases. This was not done on my advice. As these cases were filed on an emergency basis on one days' notice, I did not have access to the Debtors' bank statements at the time of filing and did not realize this had taken place when the previous verified statement was filed. I represented Ali Razjooyan in connection with a settlement with Mario Guatemala and Maria Rivera which transferred Ali Razjooyan's interests in six limited liability companies (currently debtors before this court represented by Jeffery Martin) in exchange for certain releases. Because of this connection, I referred Mr. Guatemala and Ms. Rivera to other counsel. I had also asked TD Bank, N.A. for foreclosure extensions on behalf of 10 entities managed by Mr. Razjooyan (currently represented by Maurice Verstandig) and passed along certain documents to their counsel. I did not represent those ten entities or the six entities represented by Mr. Martin. While Mr. Razjooyan referred Jesper Nylen to me for these cases, I did not realize there was any connection, as Mr. Razjooyan was not a creditor, tenant or equity owner of the Debtors in these three cases. After I learned about the connection, I referred Mr. Razjooyan to other counsel (Maurice Verstandig) for his ten bankruptcies. In the event any action is necessary against Mr. Razjooyan or his entities, conflicts counsel will be engaged, or a plan will be proposed which appoints an independent fiduciary to pursue any necessary litigation.

39. Upon information and belief, Mr. Fasano continues to represent Mr. Razjooyan in connection with the Guatemala/Rivera Matters. This continued representation is not expressly disclosed in connection with the Verified Statement.

40. Mr. Razjooyan's interests in the 41st St. and 15th St. Debtors herein is also not disclosed in the Supplemental Verified Statement.

41. On June 11th, Mr. Maurice VerStandig, proposed counsel for the ten entities managed by Mr. Razjooyan, filed motions to withdraw as counsel in all ten cases, citing "reasons mandated by the District of Columbia Rules of Professional Conduct" as its reason for withdrawing in certain (but not all) of the cases. For the remaining cases, proposed counsel for those ten entities stated that it believes it contrary to the other Debtors' legal interests for it to continue in representation of the entities for which withdrawal is not mandated.

## **LEGAL ARGUMENT**

### A. **Legal Standard for Reconsideration**

This Court has recognized that "[t]here is no rule that specifically provides for reconsideration of a Court's prior decision" and that "most motions seeking reconsideration are filed under Civil Rules 59 and/or 60." *Brooks v. Rosebar*, No. AP 20-10011-ELG, 2023 WL 2697939, at *6 (Bankr. D.D.C. Mar. 29, 2023). The instant Motion is brought under Rule 9024 of the Bankruptcy Rules, which provides that Rule 60 of the Civil Rules applies to cases under the Bankruptcy Code. Rule 60(b), in turn, provides that,

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

"[T]he standard for relief differs based upon the subsection under which a movant seeks relief." *Rosebar* at *6. The instant Motion seeks relief under either Rule 60(b)(2) or Rule 60(b)(6),

if the Court determines that relief is not appropriate under Rule 60(b)(2). Courts in sister jurisdictions have previously vacated orders approving the employment of counsel under Rule 60(b) for undisclosed connections. *In re Lewis Rd.*, LLC, 2011 WL 6140747 (Bankr. E.D. Va. Dec. 9, 2011); *see also In re eToys, Inc.,* 331 B.R. 176 (Bankr. D. Del. 2005) (Rule 60(b)(6) allows the Court to consider vacating employment orders for undisclosed conflicts of interest). This Court should do the same.

### B. The Court should reconsider its Order pursuant to Rule 60(b)(2)

Rule 60(b)(2) permits a court to "relieve a party ... from a final judgment, order, or proceeding for ... newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b). A motion under Rule 60(b)(2) must be made "within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

This Court has previously held, that:

> To obtain relief from judgment on the basis of "newly discovered evidence," a party must show that the following requirements are met: "(1) the evidence must have been in existence at the time of trial; (2) the evidence must be such that it was not and could not by the exercise of due diligence have been discovered in time to present it in the original proceeding; (3) the evidence must not be merely cumulative or impeaching; and (4) the evidence must be admissible and credible, and of such a material and controlling nature as will probably change the outcome." *Lans v. Gateway 2000, Inc.*, 110 F.Supp.2d 1, 4 (D.D.C. 2000) (*quoting In re Korean Air Lines Disaster of September 1, 1983*, 156 F.R.D. 18, 22 (D.D.C. 1994)).

*In re Salas*, No. 18-00260, 2020 WL 6054783, at *18 (Bankr. D.D.C. Oct. 13, 2020), *aff'd*, No. CV 20-3091 (FYP), 2022 WL 1154596 (D.D.C. Apr. 19, 2022). All four requirements are met here.

Mr. Fasano and the Firm failed to disclose their representation of Ali Razjooyan and Mr. Razjooyan's connections to this case in their verified statement. Mr. Fasano and the Firm

9

represented Mr. Razjooyan at the time these cases were filed and has continued to represent Mr. Razjooyan throughout the pendency of these cases. Second, the Firm and Mr. Fasano's representation of Mr. Razjooyan and his connections to these cases is not something that could have been discovered in time to raise in connection with the initial application through the exercise of due diligence. The only way the U.S. Trustee would have known about the Firm and Mr. Fasano's representation of Mr. Razjooyan would have been if Mr. Fasano and the Firm had disclosed it, which they had an affirmative obligation to do under Bankruptcy Rule 2014. The Order approving the Firm and Mr. Fasano's employment was entered on May 16, 2024, before any of the other cases were filed. However, it is now clear that the filing of all of the other cases had already been contemplated.

Finally, this evidence is not cumulative of evidence offered in connection with the application and the evidence is not impeaching in nature. There can be no doubt that this evidence is credible as Mr. Fasano admits that the Firm represents Mr. Razjooyan. Moreover, this disclosure is admissible and relevant to the consideration of the Application and should have been made at the time the Application was originally filed.

**1. The Application Should Not Have Been Approved**

    **a. Standard Under Section 327(a)**

Section 327(a) of the Code governs the employment of attorneys by a debtor in bankruptcy. It provides, in relevant part that:

> …[T]he [debtor], with the court's approval, may employ one or more attorneys…, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

An interest adverse to the estate is generally defined to mean "any economic interest that

would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant." *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) (citations omitted).

"Disinterested Person" is defined in the Code to mean a person that, as pertinent here,

> (c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. 101(14)(C)

### b. Bankruptcy Rule 2014

Bankruptcy Rule 2014 provides that an application seeking employment under section 327 of the Code shall:

> state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

The Rule also requires the application to be accompanied by:

> a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."

*Id.*

This Court has previously stated that "[c]omplete and candid disclosures are a lynchpin of the bankruptcy system to ensure that courts are able to act as the arbiter of disinterestedness. *In re Ross*, No. MC 23-20001-ELG, 2023 WL 6449211, at *3 (Bankr. D.D.C. Oct. 3, 2023) citing *In re Final Analysis, Inc.*, 640 B.R. 633, 645 (Bankr. D. Md. 2022) ("Failure to faithfully disclose conflicts usurps from parties-in-interest the opportunity to timely object to employment and

circumvents the Court's role as the arbiter of disinterestedness."); *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) ("The duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate."). The burden is on the applicant, here Mr. Fasano and the Firm, to demonstrate that they meet the disinterestedness standard. *See In re Enviva Inc., et al.*, 2024 WL 2795274 at *5 (Bankr. E.D. Va. May 30, 2024) (citations omitted).

### c. The Firm and Mr. Fasano are not disinterested.

Due to the Firm's representation of Mr. Razjooyan, Mr. Fasano and the Firm are not disinterested in these cases. A myriad of issues is raised in these cases by the representation of Mr. Razjooyan, as was made clear to all present at the June 4, 2024 hearing before this Honorable Court. Notwithstanding the fact that the federal tax returns of 15th St. and 41st St that were provided to the U.S. Trustee by Mr. Fasano state that "Ali Razjooyan Real Estat" is a 1% owner of the 15th St. and 41st St. Debtors, that information is not disclosed in either iteration of the Verified Statement of counsel, nor were Mr. Razjooyan's interests disclosed in the Petition, Statements or Schedules.

Moreover, at the same time Mr. Fasano was representing Mr. Razjooyan with regard to the Guatemala/Rivera matters, Mr. Razjooyan was transferring money from entities he owns and/or controls to certain of Mr. Nylen's Debtor entities in order to boost their bank accounts' liquidity for purposes of obtaining a refinance of the properties. The monies were all repaid to Mr. Razjooyan's entities. Certain of those transfers that appear in the Debtor's bank account statements

do not appear on the Debtor's statement of financial affairs. The statement of financial affairs has not been amended.

Further, US Realty is a creditor of the Debtors and current property manager of certain of the Debtors. US Realty is an entity that, at the June 4, 2024 hearing in other matters, Mr. Razjooyan testified was his company and was managed by him. He further testified that he did not receive any compensation from US Realty for the work he performed on its behalf. That relationship between Mr. Razjooyan and US Realty was not disclosed in either iteration of the Verified Statement filed in these cases and should have been.

Moreover, Mr. Razjooyan testified that he referred Mr. Fasano to Mr. Nylen. Mr. Razjooyan also testified that he referred District Housing and Richard Ballas to both Mr. Nylen and to the Debtor representatives in the Guatamala/Rivera matters. The two contracts for purchase of the 41st St. and 15th St. Debtors' properties were with District Housing and promised substantial equity to be returned to the estate. Again, Mr. Razjooyan, as an apparent 1% owner of the 14th and 51st St. Debtors, stood to gain from the sale of the properties. Yet, for some reason, following the withdrawal of the motions in the two separate cases heard on June 4th, Mr. Fasano also withdrew the sale motions in the 41st and 15th St. Debtors' cases without explanation and before they were set to be heard on June 5, 2024.

Although there is no current litigation between Mr. Razjooyan and Mr. Nylen, it is not far-fetched to believe that may not be the case forever. In considering the Guatemala/Rivera matters, it is apparent that, as the nineteen semi-related cases progress, additional conflicts and issues will likely arise among the various parties.

Arguably, any one of these facts taken alone may not be sufficient to render the Firm and Mr. Fasano not disinterested. However, taken together and with the continued non-disclosure and

passing of time in the nineteen cases currently pending before the Court, the U.S. Trustee cannot help but continue to have more questions than answers. That should not be the case under Section 327 and Bankruptcy Rule 2014.

As this Court has held,

> [t]he standard for disclosure is not one of the least information possible to possibly comply, it is the exact opposite and is self-policing. *In re Crivello*, 134 F.3d 831, 839 (7th Cir. 1998) ("The duty to disclose under [Bankruptcy Rule] 2014(a) is unquestionably a self-policing one."). **All facts that have <u>any</u> bearing on the disinterestedness of a professional must be disclosed**. *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 534 (Bankr. S.D.N.Y. 1994). "Bankruptcy courts have neither the resources nor the time to investigate the veracity of the information submitted in [Bankruptcy Rule] 2016(b) statements and affidavits and to root out the existence of undisclosed conflicts of interest." *Id*. Bankruptcy courts rely primarily on forthright disclosure and should not have to conduct independent factfinding investigations to determine if a professional is disqualified. *See In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998).

*In re Ross*, 2023 WL 6449211, at *3 (emphasis added). Accordingly, this Court should determine that the Firm and Mr. Fasano are not disinterested and should deny their retention application.

Finally, these are not issues that can be resolved through the use of conflict counsel. The Debtors here have indicated that they intend to sell the properties in order to satisfy the claims of their creditors. Concerns have been raised as to the true equity in the Debtors' properties and as to the legitimacy of any buyer procured by Mr. Razjooyan. Whether the proposed sale occurs by motion or through a plan, proposing the resolution of these cases by the sale of these properties is the core function of Chapter 11 counsel in this case. As Mr. Razjooyan is said to have brought the proposed purchaser to the Debtors and Mr. Nylen, and Mr. Razjooyan has an ownership interest in one or more of the Debtors here, it is not clear that Mr. Fasano and the Firm can " 'fairly and fully advise' [the Debtors] in the negotiation and drafting" of a plan or sale motion when Mr. Fasano and the Firm may not even be able to advocate or negotiate for a sale of the property that

may have a negative effect on Mr. Razjooyan. *See Enviva*, 2024 WL 2795274 at *8 quoting *In re Project Orange Assocs., LLC,* 431 B.R. 363 (Bankr. S.D.N.Y. 2010).

### C. The Court should reconsider its Order pursuant to Rule 60(b)(6)

The U.S. Trustee recognizes that Civil Rule 60(b)(6) is a catch-all provision that "provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice ....'" *Rosebar* at *7 *quoting Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1987) (*quoting Klapprott v. United States*, 335 U.S. 601 (1949)). This Court in *Rosebar* further found that "[w]hile Civil Rule 60(b)(6) does not direct courts to specific factors that "justify relief," the Supreme Court has cautioned "that it should only be applied in 'extraordinary circumstances.' " *Id. quoting Riley v. BMO Harris Bank, N.A.*, 115 F. Supp. 3d 87, 94 (D.D.C. 2015) (*quoting Ackermann v. United States*, 340 U.S. 193, 199 (1950)). The circumstances should be such that suggest that "the party is faultless in the delay," otherwise the proper avenue for relief would be under subsection (1) provided the party's neglect is "excusable." *Id. quoting Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 393 (1993). Moreover, a party should not move under (b)(6) if either of subsections (1) – (5) are available. *Id. citing Salazar v. District of Columbia,* 633 F.3d 1110, 1116 (D.C. Cir. 2011). For the reasons set forth above, if the Court determines that the new disclosures and lack of complete disclosures do not fall under Rule 60(b)(2), then the Court can and should grant reconsideration pursuant to Rule 60(b)(6).

### **CONCLUSION**

For the reasons stated herein, the Court should grant the U.S. Trustee's Motion for Reconsideration, Vacate its Order Approving the Application, and enter an order denying the employment of Mr. Fasano and McNamee Hosea, P.A. in these cases.

Dated:  July 10, 2024

Gerard R. Vetter
Acting United States Trustee, Region Four

By: */s/ Kristen S. Eustis*
Kristen S. Eustis, Trial Attorney
Federal Bar No. MD28984
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7227- Direct Dial
Kristen.S.Eustis@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2024, I electronically filed the foregoing Motion with the Clerk of the Court and served it via the Court's CM/ECF system upon all counsel who have entered an appearance in these cases:

Nancy L. Alper nancy.alper@dc.gov

Kristen S. Eustis Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov

Justin Philip Fasano jfasano@mhlawyers.com, jfasano@ecf.courtdrive.com; hleaphart@mhlawyers.com;cmartin@mhlawyers.com;fasano.justinr92003@notify.bestcase.com

Emil Hirsch ehirsch@carltonfields.com, ewhittington@carltonfields.com; wdcecf@cfdom.net;tcarroll@carltonfields.com

Michael D. Nord mnord@gebsmith.com

Elizabeth Drayden Peters epeters@gebsmith.com

U. S. Trustee for Region Four USTPRegion04.DC.ECF@USDOJ.GOV

Stephon Woods stephon.woods@dc.gov

*/s/ Robert W. Ours*
Robert W. Ours
Paralegal Specialist